**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., <br> *Plaintiff* | § § § § § § § § § | SA-20-CV-01111-XR |
| -vs- | | |
| KENNETH A. DOERR, BOBBY R. CLEMENTS, <br> *Defendants* | | |

**ORDER ON MOTION FOR DEFAULT JUDGMENT**

On this date, the Court considered Plaintiff's Motion for Default Judgment against Defendants Kenneth A. Doerr and Bobby R. Clements (collectively, "Defendants"). Docket no. 14. After careful consideration, Plaintiff's Motion is GRANTED.

**BACKGROUND**

Plaintiff Joe Hand Promotions, Inc. ("JHP") was granted exclusive commercial distribution rights to broadcast the closed-circuit telecast of the *Ultimate Fighting Championship® 229: Khabib vs. McGregor*, including all undercard bouts and the entire television broadcast, telecast nationwide on October 6, 2018 (the "Program"). Docket no. 1 ¶ 1. The Program broadcast originated via satellite uplink and was re-transmitted interstate to cable systems and satellite television companies via satellite signal. *Id.* ¶ 8. Plaintiff entered into agreements with various commercial establishments in Texas that allowed them, for a fee, to exhibit the Program to their patrons. *Id.* ¶ 9.

Plaintiff alleges that Defendants did not contract with or pay a fee to Plaintiff to obtain a proper license or authorization to show the Program at the establishment known as Beer Lease, located at 3420 Fm 78 in McQueeney, Texas (the "Establishment"). *Id.* ¶ 10. Plaintiff alleges that Defendants willfully intercepted or received the interstate communication of the Program, or

assisted in such actions, then unlawfully transmitted, divulged, and published said communication, or assisted in unlawfully transmitting, divulging, and publishing said communication to their patrons. *Id.* ¶ 11. Plaintiff alleges that Defendants then showed the Program without authorization, license, or permission. *Id.* ¶ 12.

Plaintiff alleges that Defendants pirated Plaintiff's licensed exhibition of the Program and infringed upon Plaintiff's exclusive rights while avoiding proper authorization and payment, and that Defendants acted willfully and with the purpose and intent to secure a commercial advantage and private financial gain. *Id.* ¶ 14. Plaintiff alleges that Defendants' agents, servants, and employees acted within the scope of their employment and authority at the time of the alleged wrongful conduct. *Id.* ¶ 15.

On September 17, 2020, Plaintiff filed this action, alleging that Defendants engaged in cable and satellite piracy in violation of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151 *et seq*. *See* Docket no. 1. Summonses were issued, and Plaintiff filed an affidavit of service indicating that Defendant Bobby Clements was duly served via personal service on October 24, 2020. Docket no. 4. After eight unsuccessful attempts at personal service on Defendant Doerr at his usual place of abode, Plaintiff filed a motion for substitute service. *See* docket no. 4. The Court granted Plaintiff's motion on November 12, 2020, permitting Plaintiff to serve Defendant Doerr by leaving a true copy of the summons, with a copy of the complaint attached, with anyone over sixteen years of age at the property located at 421 Ferryboat Lane, New Braunfels, Texas 78130, with additional service by first class regular mail. Docket no. 5. Plaintiff effectuated service on Defendant Doerr in accordance with the substitute service order on November 28, 2020, after leaving a copy of the summons and complaint with Doerr's adult son at the service address and

sending an additional copy of the summons and complaint to the same address via first class regular mail. *See* docket no. 10.

Though their answers were due on November 16, 2020 and December 21, 2020, respectively, Defendants Clements and Doerr have both failed to file an answer or other responsive pleading, request an extension of time in which to do so, or otherwise appear in this action. Plaintiff moved for entry of default against both Defendants. Docket nos. 8, 11. The clerk entered default against Clements on December 9, 2020, and against Doerr on January 6, 2021. Docket no. 9, 12. On February 8, 2021, Plaintiff filed a motion for default judgment, which the Court now considers. Docket no. 14.

## DISCUSSION

### I. Legal Standard

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012). The Court examines each in turn.

### II. Analysis

#### A. Jurisdiction

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject

3

matter and the parties." *System Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Such federal-question jurisdiction extends to cases in which a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988). Here, Plaintiff's action was brought in federal court, asserting "Anti-Piracy" claims involving the Federal Communications Act of 1934 (the "Act"), pursuant to 47 U.S.C. §§ 553 and 605. Thus, Plaintiff asserts claims involving a federal question, allowing this Court to exercise federal question subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

This Court also has personal jurisdiction over the parties to this case, as Plaintiff has properly effected service of process on both Defendants in accordance with Texas law. "[S]ervice of process . . . initiates a defendant's obligations in a civil suit[.]" *Jefferson v. Delgado Cmty. Coll. Charity Sch. of Nursing*, 602 F. App'x 595, 598 (5th Cir. 2015) (per curiam). Absent proper service of process, a court lacks personal jurisdiction over a defendant, and any default judgment against the defendant would be void. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). Pursuant to the Federal Rules of Civil Procedure, the plaintiff bears the burden of ensuring that the defendant is properly served with a copy of the summons and the complaint within ninety days of filing the complaint. *See* FED. R. CIV. P. 4(c)(1), (m).

The Court has personal jurisdiction over defendants personally served with process within the state in which this Court sits. *See Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 911 (W.D. Tex. 2015) ("[T]he Fifth Circuit has recognized, '[f]ederal courts may . . . always

assume jurisdiction over a defendant in any action where there is personal, in-state service of process.'" (quoting *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 n.2 (5th Cir. 2006))). The Federal Rules provide for service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). Because this Court sits in the Western District of Texas, it will look to Texas authority for service of process.

Texas Rule of Civil Procedure 106(a) provides two methods for effecting personal service on a defendant: (1) by personal delivery, or (2) by registered or certified mail, return receipt requested. TEX. R. CIV. P. 106(a)(1)–(2). If service by one of the two methods provided in Rule 106(a) fails, a court may, upon a motion supported by a proper affidavit, authorize substitute service pursuant to Texas Rule of Civil Procedure 106(b). The affidavit must state the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and state specifically the facts showing that service has been attempted through either personal delivery or registered or certified mail at the location named in such affidavit but has not been successful. TEX. R. CIV. P. 106(b). Substitute service may be effected: (1) by leaving a copy of the documents with anyone over sixteen years of age at the location of the defendant's usual place of business or usual place of abode as specified by affidavit, or (2) in any other manner deemed to be reasonably effective to give the defendant notice. TEX. R. CIV. P. 106(b)(1)–(2).

Here, Plaintiff filed suit on September 17, 2020, and on October 24, 2020, Defendant Bobby R. Clements was served by personal delivery of a copy of the summons and complaint at 501 Fm 3009, Apt. 7204 in Shertz, Texas 78154. Docket no. 4. Because he was timely and

personally served with process in the state of Texas, the Court has personal jurisdiction over Defendant Clements.

On November 12, 2020, Plaintiff moved for authorization to use substitute service. Docket no. 5. In accordance with Rule 106(b), Plaintiff's motion was supported by an affidavit stating the location of Doerr's usual place of abode—421 Ferryboat Lane, New Braunfels, Texas 78139—and setting forth facts showing that the process server had attempted to personally deliver the summons and complaint at that address on eight occasions without success. *See* docket no. 5-1. The Court granted Plaintiff's motion,[1] docket no. 6, and Plaintiff served Defendant Doerr in accordance with the substitute service order, docket no. 10. Plaintiff sent a copy of the summons and complaint to Doerr's usual place of abode via first class regular mail on November 16, 2020, and left a copy of the summons and complaint with his adult son at the service address on November 28, 2020. *See* docket no. 10. Defendant Doerr was thus timely and properly served in Texas in compliance with state law. Accordingly, the Court concludes that it has personal jurisdiction over Defendant Doerr.

**B. Liability**

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although the Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-

---

[1] Rule 106 requires the plaintiff to demonstrate only unsuccessful attempts at personal service or service by mail; it does not require both.

pleaded or to admit conclusions of law."); *see also* 10A Wright & Miller *et al.*, FED. PRAC. & PROC. CIV. § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

Thus, prior to a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance[.]" *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

In this case, Plaintiff's complaint relates to the piracy of television communications under the "Act", as amended, 47 U.S.C. §§ 553 and 605.

### 1. Sections 553 and 605 Distinguished

The Act prohibits the "[u]nauthorized interception or receipt or assistance in intercepting or receiving [cable] service" communications. 47 U.S.C. § 553(a). "Cable service" is defined as a "one-way transmission to subscribers of (i) video programming, or (ii) other programming service," and any necessary interactions allowing subscribers access to such service. 47 U.S.C. § 522(6). The Fifth Circuit, as a matter of first impression in *J&J Sports Productions, Inc. v. Mandell Family Ventures, L.L.C.*, joined the majority of circuits in holding the proscriptions of § 553 apply to interceptions or receipts of wire communications, and § 605 applies when radio communications are received or intercepted. 751 F.3d 346, 352 (5th Cir. 2014) ("A logical reading of the two provisions reveals a clear demarcation whereby '[§] 605 deals with communications traveling

through the air (via radio), [and] § 553 covers communications traveling over cable wire.'" (quoting *Charter Commc'ns. Entm't I DST v. Burdulis*, 460 F.3d 168, 173 (1st Cir. 2006))).

Plaintiff's Complaint seeks damages under § 605 or, alternatively under § 553. However, it expressly states, "The Program broadcast originated via satellite uplink and was subsequently re-transmitted . . . via satellite signal." Docket no. 1 ¶ 8. Although it is unclear from Plaintiff's Complaint whether Defendants used internet, cable, or satellite to exhibit the Program, it is plausible that Defendants received the Program via satellite. "And when 'there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.'" *J & J Sports Prods., Inc. v. Enola Invs., L.L.C.*, 795 F. App'x 313, 315 (5th Cir. 2020) (quoting *Justiss Oil Co. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996)).

Thus, reading the record as a whole, the Court will assess damages based on violations alleged under § 605, "as the statute 'does not require identification of the precise means used to accomplish the piracy of a satellite signal.'" *Id.* at 315 (quoting *J&J Sports Prods., Inc. v. Brady*, 672 F. App'x 798, 802–03 (10th Cir. 2016)).

### 2. Plaintiff's Section 605 Claim

Unauthorized interception or receipt and subsequent dissemination of radio communications so intercepted or received is prohibited. *See* 47 U.S.C. § 605 (prohibiting not only unauthorized interception or receipt of radio communications but also "[u]nauthorized publication or use of communications" so acquired). Other than securing proper authorization, another exception exists. The prohibition on intercepting/receiving and disseminating (or assistance in so doing) radio communications does not apply if (1) the communications are not encrypted, and (2) a marketing system does not exist allowing individuals the opportunity to obtain authorized access. *See id.* § 605(b). Plaintiff's Complaint alleges that Defendants violated § 605

of the Act "willfully and with the purpose and intent to secure a commercial advantage and private financial gain." Docket no. 1 ¶ 14. To establish Defendants' liability, it must be shown that (1) the Program was disseminated without authorization in Defendants' Establishment; and (2) the exception to § 605 does not apply—*i.e.*, that the Program was encrypted, and was available for Defendants' access by authorized means. Any willfulness of Defendants' conduct is relevant only to the issue of damages.

According to Plaintiff's Complaint, Defendants failed to contract with Plaintiff to exhibit the fight, and "[a]t no time did Plaintiff give the Defendants license, permission, or authority to receive and exhibit the Program in their Establishment." Docket no. 1 ¶ 10. To protect their programming from piracy, Plaintiff hires auditors to seek out and identify signal pirates. Docket no. 14-2 ¶ 7. On the night of the Program, one of Plaintiff's auditors, Eric Vasquez, entered the Establishment and observed the unlicensed showing of the Program on six televisions and one projector screen. Docket no. 14-5, Vasquez Decl. at 1. Mr. Vasquez detailed various facts about the Establishment, the Program, the number of patrons, and took multiple photographs of the premises as evidence. *Id.* at 1–34. Taking Plaintiff's well-pleaded allegations as true, this Court finds that the Program was disseminated without authorization in the Establishment.

Plaintiff has the proprietary rights to exhibit the Program and sublicense it through an agreement to commercial establishments. Docket no. 14 ¶ 9. Plaintiff alleges that "[t]he interstate satellite transmission of the Program was electronically coded or scrambled and was not available to or intended for the free use of the general public on the scheduled date of the Program." *Id.* Commercial establishments, like the one in this case, would be authorized to access the Program only through an agreement and "[u]pon receipt of the proper commercial licensing fee by Plaintiff." *Id.* Thus, this Court finds that the Program was encrypted, and was available for

9

Defendants' access only through authorized means; therefore, the exception to § 605 does not apply, and Plaintiff has sufficiently established Defendants' liability.

### C. Damages

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Damages awarded in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Usually, non-liquidated damages are proven at a hearing. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) for the general rule that non-liquidated damages in default judgment are not awarded without evidentiary hearing). However, where a mathematical calculation of unliquidated damages is possible with reference to adequately detailed affidavits, a hearing is not necessary. *Id.* The discretionary nature of whether to conduct a hearing is supported by the express language in the Federal Rules themselves. *See* FED. R. CIV. P. 55(b)(2) (emphasis added) ("The court may conduct hearings . . . when, to enter or effectuate a judgment, it needs to: . . . (B) determine the amount of damages[.]").

In this case, Plaintiff provided detailed affidavits in support of its damage claims on which the Court, in its discretion, may rely. Therefore, the Court finds an evidentiary hearing unnecessary to determine the amount of damages to which Plaintiff is entitled under its Communications Act claim.

Section 605 contains three damage provisions relevant to this case. First, statutory damages are prescribed "for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just[.]" 47 U.S.C. §

605(e)(3)(C)(i)(II).  Second, if violations were "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may increase damages "whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section."  47 U.S.C. § 605(e)(3)(C)(ii).  Finally, § 605 mandates the recovery of costs and attorney's fees to a prevailing plaintiff.  47 U.S.C. § 605(e)(3)(B)(iii).

    **1. Statutory Damages Under Section 605(e)(3)(C)(i)(II)**

Plaintiff seeks $10,000 in statutory damages premised on lost licensing fees, and compensation for being deprived of the value, benefits, and profits that may have been realized, but for Defendants' piracy of the Program.  Docket no. 14 ¶ 20.  As Plaintiff notes in its briefing, lost licensing fees are a mere baseline in assessing statutory damages.  *Id.* ¶ 24; *see Entm't by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (explaining how damages of mere broadcast cost would not incentivize statute compliance).  This Court has previously assessed damages by looking to the number of patrons present during the unauthorized broadcast.  *See J&J Sports Prods., Inc. v. Tejada*, No. 5-13-CV-01020-XR, 2014 WL 869218, at *2 (W.D. Tex. Mar. 4, 2014) (assessing baseline statutory damages using number of patrons established by affidavit).  This "per-patron" approach is not uncommon in previous § 605 cases.  *See, e.g.*, *Al-Waha Enters.*, 219 F. Supp. at 776 (stating "the per-patron approach is an appropriate starting point for calculating damages").

Here, Plaintiff submitted the affidavit of Eric Vasquez, an auditor who was present at the Establishment on the date of the Program, which states there were approximately 60 patrons present and viewing the Program on multiple screens.  Docket no. 14-5, Vasquez Decl. at 2.  Mr. Vasquez further observed that the capacity of the Establishment is between 150 and 160 people. *Id.*  According to the submitted "Rate Card" (used to calculate sub-licensing fees based on venue

capacity), a commercial establishment with a venue range of 151–175 would be charged $1,470.00 for the legal right to broadcast the Program. Docket no. 14-4. This Court has previously found trebling the amount a defendant would have been required to pay to legally license the event to be a just assessment of damages. *See, e.g.*, *Tejada*, 2014 WL 869218, at *2 (awarding "three times the amount of the legal sub-license fee"). This multiplier accounts for "money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight." *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008). In this case, a trebling of the $1,470.00 fee is $4,410.00; therefore, the Court awards $4,410.00 in statutory damages.

### 2. Statutory Damages Under Section 605(e)(3)(C)(i)(II)

Defendants, by default, admit to violating § 605 "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Given the complexity and limited methods of intercepting closed-circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast by chance, many courts, including this Court, have held such conduct to be willful and for the purposes of direct or indirect commercial advantage or private financial gain. *See Garcia*, 546 F. Supp. 2d at 386 (citing *Al–Waha Enterprises, Inc.*, 219 F. Supp. 2d at 776). As one court observed, "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Time Warner Cable of New York City* v. *Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999).

Because of the extreme unlikelihood that Defendants could inadvertently have acquired the signal to display the Program, coupled with their failure to file an answer denying Plaintiff's

allegations on this issue, the Court finds that Defendants' violation of 605(a) was "committed willfully and for purposes of direct or indirect commercial advantage."

Courts assessing the amount of damages to award for willful violations in signal piracy actions look to a variety of factors, including the number of patrons, whether food and drinks were sold to patrons, the number of televisions, and whether the event was advertised. *See Garcia*, 546 F. Supp. 2d at 386; *J & J Sports Prods., Inc. v. River Park Sports Bar, Inc.*, No. CV H-15-2638, 2016 WL 6398491, at *5 (S.D. Tex. Oct. 28, 2016) (discussing the factors used to estimate the damages for willful violations). Although an award of additional damages for a willful act should be sufficient to deter such piracy in the future, the Court is mindful that such an award should not be so high as to drive the actor out of business. *See Tejada*, 2014 WL 869218, at *2 n.4; *see also Garcia*, 546 F. Supp. 2d at 386; *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) ("Depending on the circumstances, a low five figure judgment may be a stiff fine that deters, while a high five figure judgment puts a bar out of business. The range in the statutory award might allow for a sanction that deters but does not destroy.").

Here, Plaintiff argues that it is entitled a "substantial amount" in additional damages based on Defendants' willful conduct because (1) the Program was broadcast on multiple (at least six) televisions and a large projector screen; (2) the Establishment sold drinks on the date of the Program; and (3) the broadcast of the Program was advertised on social media. Docket no. 14 ¶ 40 (citing docket no. 14-5, Vasquez Decl.). Though Plaintiff seeks $30,000 in additional damages for this willful violation, this amount is excessive in light of the relatively small size of the venue and the relatively few patrons in attendance, especially considering that Defendants could have legally licensed the fight for up to 175 patrons for only $1,470.00. The Court finds damages for a willful violation in the amount of $7,000 appropriate based on the Establishment's approximated

sixty patrons on the night of the Program, advertising on social media, and the number of screens displaying the Program.

### 3. Recovery of Costs and Attorney's Fees

The Act mandates a prevailing plaintiff be awarded costs and attorney's fees. *See* 47 U.S.C. § 605(e)(3)(B)(iii). Plaintiff seeks to recover attorney's fees based on the hourly time for prosecution of this action and an award of full costs. Docket no. 14 at 18. Plaintiff has submitted the affidavit of Jamie King to establish the reasonable and necessary attorney's fees. Docket no. 14-8 ¶ 6. Based upon the affidavit and the time spent preparing this case, the Court awards reasonable attorney's fees in the amount of $1,950. The Court declines to award attorney's fees for potential post-trial and appellate services.

## CONCLUSION

Accordingly, Plaintiffs' Motion for Default Judgment (docket no. 14) is GRANTED. Plaintiff is awarded $11,410 in damages and $1,950 in attorney's fees. A separate judgment in favor of Plaintiff shall issue in accordance with Rule 58. Plaintiff is awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within fourteen days of the entry of the Judgment. *See* Local Rule 54.

It is so **ORDERED**.

**SIGNED** this 5th day of April, 2021.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE